United States Courts
Southern District of Texas
FILED

JUN 0 8 2015

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

*Sealed*
Public and unofficial staff access to this instrument are prohibited by court order.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | Criminal No. |
| v. | § § | UNDER SEAL  **15 CR 306** |
| CONSTANCE UMEH-NNADI, | § § § § § § § § | |
| Defendant. | § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home health services because of an illness or disability causing them to be homebound. Payments for home healthcare services were typically made directly to a HHA based on claims submitted to

the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid for home health services only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

   a. the patient was confined to the home, also referred to as homebound;

   b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and

   c. the determining physician signed a certification statement specifying that:

      i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

      ii. the beneficiary was confined to the home;

      iii. a POC for furnishing services was established and periodically reviewed; and

      iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

6. Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

8. CNN Home Health Agency, Inc. ("CNN") was a Texas corporation doing business at 9360 Concourse Drive, Houston, Texas. CNN submitted claims to Medicare for home health services.

9. From in or about 2009 to in or about 2015, CNN billed Medicare approximately $3.1 million for home health services that it had purportedly provided to Medicare beneficiaries. Medicare paid approximately $3.7 million on those claims.

10. Defendant **CONSTANCE UMEH-NNADI**, a resident of Harris County, Texas, was the owner, director of nursing, and administrator of CNN.

11. Recruiter 1 was a patient recruiter for CNN.

12. Recruiter 2 was a patient recruiter for CNN.

### COUNT 1
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

13. Paragraphs 1 through 12 are re-alleged and incorporated by reference as if fully set forth herein.

14. From in or around 2009 through in or around 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendant

## CONSTANCE UMEH-NNADI

did knowingly and willfully combine, conspire, confederate and agree with Recruiter 1, Recruiter 2, and others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items and services.

### Purpose of The Conspiracy

15.   It was a purpose of the conspiracy for defendant **CONSTANCE UMEH-NNADI**, Recruiter 1, Recruiter 2, and their co-conspirators to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of defendants and their co-conspirators.

### Manner and Means of The Conspiracy

The manner and means by which defendant **CONSTANCE UMEH-NNADI**, Recruiter 1, Recruiter 2, and others known and unknown to the grand jury sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

16.   Defendant **CONSTANCE UMEH-NNADI** maintained a Medicare provider number, which she used to submit claims to Medicare for home health services that were not medically necessary or not provided.

17.     Defendant **CONSTANCE UMEH-NNADI** paid Recruiter 1 and Recruiter 2 to refer Medicare beneficiaries to CNN for home health services.

18.     Recruiter 1 and Recruiter 2 referred beneficiaries to CNN for home health services even though they did not qualify for such services under Medicare.

19.     Defendant **CONSTANCE UMEH-NNADI** billed Medicare and received payment from Medicare for home health services that were not provided to those beneficiaries and/or were not medically necessary for those beneficiaries.

20.     From in or about 2009 to in or about 2015, CNN billed Medicare approximately $3.1 million for home health services that it had purportedly provided to Medicare beneficiaries. Medicare paid approximately $3.7 million on those claims.

21.     After Medicare deposited payments into CNN's bank account, defendant **CONSTANCE UMEH-NNADI** transferred proceeds of the fraud to herself, Recruiter 1, Recruiter 2, and their co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-3
### Healthcare Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

22.     Paragraphs 1 through 12 and 14 through 21 are re-alleged and incorporated by reference as if fully set forth herein.

23.     On or about the date specified below, in the Houston Division of the Southern District of Texas, and elsewhere, defendant

**CONSTANCE UMEH-NNADI**

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items, and services, did

knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, as set forth below:

| Count | Medicare Beneficiary | Approximate Start of Care Date | Approximate Payment Date | Approximate Medicare Payment |
|---|---|---|---|---|
| 2 | A.M. | May 15, 2013 | January 30, 2014 | $1,963.18 |
| 3 | E.L. | February 1, 2011 | April 21, 2011 | $1,791.84 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 4
### False Statements Relating to Healthcare Matters
### (Violation of 18 U.S.C. §§ 1035 and 2)

24. Paragraphs 1 through 12, 14 through 21, and 23 are re-alleged and incorporated by reference as if fully set forth herein.

25. On or about the dates set forth below, in Harris County, in the Southern District of Texas, and elsewhere, defendant

**CONSTANCE UMEH-NNADI**

aiding and abetting others and aided and abetted by others, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection

with the delivery of and payment for healthcare benefits, items, and services, and in a matter involving a healthcare benefit program, specifically Medicare:

| Count | Medicare Beneficiary | Approximate Start of Care Date | Description | Approximate Medicare Payment |
|---|---|---|---|---|
| 4 | E.L. | February 1, 2011 | OASIS Start of Care Assessment | $1,791.84 |

All in violation of Title 18, United States Code, Sections 1035 and 2.

### COUNT 5
### Conspiracy to Pay Healthcare Kickbacks
### (Violation of 18 U.S.C. § 371)

26. Paragraphs 1 through 12, 14 through 21, and 23 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

27. From in or around 2012 through in or around 2014, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendant

**CONSTANCE UMEH-NNADI**

did knowingly and willfully combine, conspire, confederate and agree with Recruiter 1, Recruiter 2, and others known and unknown to the grand jury, to commit certain offenses against the United States, that is,

    a. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by

Medicare; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

b.  to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare or Medicaid; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of The Conspiracy

28.  It was a purpose of the conspiracy for defendant **CONSTANCE UMEH-NNADI** and others to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom CNN submitted claims to Medicare.

### Manner and Means of The Conspiracy

The manner and means by which defendant **CONSTANCE UMEH-NNADI** and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

29.  Paragraphs 16 through 21 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

## Overt Acts

30. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a. In or about May 2013, defendant **CONSTANCE UMEH-NNADI** paid Recruiter 1 approximately $400 for referring Medicare beneficiary A.M. to CNN for home health care services.

b. In or about June 2013, defendant **CONSTANCE UMEH-NNADI** paid Recruiter 1 approximately $400 for referring Medicare beneficiary W.B. to CNN for home health care services.

c. In or about June 2014, defendant **CONSTANCE UMEH-NNADI** paid Recruiter 2 approximately $400 for referring Medicare beneficiary J.C. to CNN for home health care services.

d. In or about July 2014, defendant **CONSTANCE UMEH-NNADI** paid Recruiter 2 approximately $400 for referring Medicare beneficiary A.C. to CNN for home health care services.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 6-9

### Payment and Receipt of Healthcare Kickbacks
(Violation of 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), 18 U.S.C. § 2)

31. Paragraphs 1 through 12, 14 through 21, 23, and 27 through 30 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

32. On or about the dates enumerated below, in Harris County, in the Southern District of Texas, and elsewhere, defendant **CONSTANCE UMEH-NNADI** as set forth below, aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully offer, pay, solicit, and receive remuneration, specifically, kickbacks and bribes,

directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare as set forth below:

| Count | Recipient | In or About Date | Approximate Amount of Kickback |
|---|---|---|---|
| 6 | Recruiter 1 | May 2013 | $400 |
| 7 | Recruiter 1 | June 2013 | $400 |
| 8 | Recruiter 2 | June 2014 | $400 |
| 9 | Recruiter 2 | July 2014 | $400 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1) and (b)(2) and Title 18 United States Code, section 2.

## CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a)(7))

33. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendant **CONSTANCE UMEH-NNADI** that upon conviction of any Counts in this Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses—approximately $3,727,774—is subject to forfeiture.

34. Defendant **CONSTANCE UMEH-NNADI** is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

35. Defendant **CONSTANCE UMEH-NNADI** is notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of defendant or her co-conspirators:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred, or sold to, or deposited with a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

William S. W. Chang
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE